I'm delighted to be sitting here today with Judge Cowan and Judge Greenberg and we're going to call the first case of Fantone v. Latini and is it Mr. Lon? It is. Am I pronouncing that correctly? You are. Good afternoon or good morning your honors. I'm Pete Lon from Jones Day. With me here at council table is my colleague Tara Ackerman whose hard work is reflected in our submissions. I reserve two minutes for rebuttal. Mr. Fantone claims that his due process rights were violated when his previously granted parole was rescinded while he was a result. I have trouble understanding how, from an administrative standpoint, you could have appropriate hearings in a matter such as this. You're raising a due process claim but I think you would concede that if this dealt only with his placement in the R.H.U. there'd be no liberty interest implicated to understand it. Yes that's right your honor. And there is no liberty interest in parole under Pennsylvania law. It's a matter of grace and you're arguing that it's the combination of the two. The placement in the R.H.U. and the conditions associated with that and the fact that his parole then was rescinded gives rise to a liberty interest that would require due process protections. But how would the prison administrators know when they've got to provide certain procedural requirements and when not? That's a good question. It's one that we've spent some time talking about because the answer is not readily apparent. But it seems to us that if a prisoner has been granted parole, that is that would be something known. It would be something known to the prison officials. And if they then hold disciplinary proceedings, it seems to us it's not too much to ask that due process rights should be should be given to the prisoner because there is a liberty interest, albeit a nascent one or a spring executory one, to put it in the state terms, that is going to attach very soon. But the fact that he receives a misconduct charge and even found guilty doesn't disqualify him from parole. It does not as a matter of absolute law, but as a matter of practice it does. And perhaps if I go backwards, I can work my way through to that point because I think you're, not surprisingly, you're on to the critical point in this case, in this appeal. And how it differs from the Boone case. Absolutely. I expected to feel some questions from Judge Wilkinson, the court that heard it. So, and I'm happy to address those. In Wilkinson, the court articulated when it thinks a due process right attaches and what it thinks what the test is. And the court said, this is on page 224, that due process rights are flexible and call for such procedural requirements as the particular situation demands. And so I think in Wilkinson, the court left open the idea that due process is not a check-the-box situation where you either have to have this box checked, that is, you know, you've been released on parole, or the other box checked, which is that, for example, you're in a supermax facility with no ability to get out. But rather, the court left open that it should be a flexible test that looks at the totality of the circumstances. The crux of the dispute here is, under the circumstances present here, do we satisfy this flexible test as articulated by the court in Wilkinson? And we submit that Mr. Fantone does. And one gets there by looking at the two critical cases, that is, Sandin, on the one hand, 1995, and Wilkinson, 2005. In Sandin, the court found, ultimately, no liberty interest. Mr. Sandin was a, okay, and so then Wilkinson, ten years later, 2005. The court is aware of the facts of that case. It involves, in Ohio, supermax prison, a very limited chance of getting out of the supermax situation, subject to some rules. And ineligibility for parole. And ineligibility for parole. And the question is, I think, is ineligibility something that is, it can only be absolute, or is it something that can essentially be circumstantial? In the situation facing Mr. Fantone, he is put, as the court knows, he is put in administrative confinement. And for the last seven months he spent in prison, he was in solitary confinement for all but three days. And so he was first in the R.H.U. on disciplinary, and then held in there on administrative confinement. As the court knows, the disciplinary proceedings, which he claims were instituted to deprive him of due process rights, in fact, were later dismissed. While, of course... Doesn't that show he got processed? I mean, it shows he got appeal process, and he prevails. He got processed, but it was too late for what really mattered, which was his liberty interest. Well, isn't the gripe then with the parole board? That they didn't give him an opportunity to be heard? It could be, but I think the gripe is really with the process, because it's well known, and... But he could have gotten, you could have had all that process that, and I want to ask you what process that he should have received that he didn't receive, but all you're saying is he should have had a greater opportunity to be heard. A greater opportunity to be heard. He still could have been found guilty after that had his appeal process, and we'd still... it wouldn't have made a difference. Well, effectively, he had no opportunity to be heard in front of the parole board, because... Well, that's why I'm saying, isn't your gripe with the parole board? I think our gripe is with the prison system process that led to the parole board, because under the way the parole board handles things, and I think the Commonwealth would concede this, that while an inmate is in administrative confinement or disciplinary confinement, he will not be allowed to appear before the parole board to contest, or to argue in favor of parole. And so what happens... Isn't that typical, though? Apparently it is. What relief are you seeking in this case? What do you want us to do? I think two things. First of all, we think that the... obviously from our briefs, that the case was improvidently dismissed by Judge Eddy. Okay, that's not relief. Now, what do you want us to do? I believe that he should be sent back to try to be... to be given the opportunity to establish that he meets this flexible test that's articulated in Wilkinson. That is, that he would... And then what? And then what? Does he get damages, or what? That's what he's seeking. He's seeking damages. Whether he can recover them, of course, would be proven at trial. But effectively, he spent much longer in prison than he would have spent had his parole not been rescinded while he was in administrative confinement. Was he paroled finally? He ultimately served his entire sentence. Oh, he maxed out? He maxed out. He was just released a couple of months ago. So he was transferred. Ultimately, what happened... pretty much what the guards threatened him with is exactly what happened. He was put in solitary for three, seven months in the hole in SCI Pittsburgh. And then at the end of that period, he was released from solitary and transferred to SCI Cole Township where he served out his sentence. And so the exact two things the guard told him were going to happen, as he alleges in his retaliation claim, were exactly what happened. He served the rest of his time in the hole, and he then got transferred to Cole Township, four hours away from his family. Your retaliation claim is a little simpler in a way. Is the claim that, well, because he made these complaints and certain things he did, they retaliated against him by putting him in this, what you call, disciplinary facility? There are two parts to the retaliation claim that Mr. Fantone alleges. The first is that, while he was being questioned about this alleged methadone cupping situation, where it was alleged that he held onto his medication and presumably gave it to another inmate, he alleges that when he was questioned about that in the disciplinary proceedings, that he refused... he took a Fifth Amendment right. And there's a dispute with the Commonwealth whether or not we submit the case law as uniform that he did, because the underlying accusation is a felony. And this is not a situation where he was being accused of taking rolls off another inmate's plate or stealing a book from the library. He had a very significant liberty interest at stake with the methadone allegation. So that's part one. The second is that he alleges that, in the response to filing a disciplinary proceeding against Lieutenant Berger and Lattini, that he was retaliated against for that. Again, whether or not that's true is precisely what should remain to be proven at trial. He has not had an opportunity. It could be that he tries that case and fails. It could be that he tries it or takes discovery on it and succeeds. But he never got that opportunity. But we think Judge Eddy dismissed it for it being not well pleaded. We submit that under no effective pleading rules is it not well That case can stand on its own even if your initial case cannot stand. It can. You're absolutely right, Your Honor. These are two separate causes of action. They are. The conspiracy claim really rises and falls with the due process claim. But the retaliation claim is a stand-alone claim that does not turn on that particular due process issue in Wilkinson. So all you want us to do on that is, in effect, give you a chance at a trial. That's correct. I believe that Mr. Fantone is entitled to prove his case. And I think that the court's analysis in Wilkinson suggests very strongly that he should be given the opportunity to try to satisfy this admittedly flexible test. Are you saying that the judge did not allow it because of the way it was planned, rather than looking and saying, look, this is what's planned, and it just doesn't add up? On the conspiracy claim and the retaliation claim, the judge tossed them based on the pleadings. She determined that the claim was not adequately pleaded. She also, on the conspiracy claim, concluded that it, because it was derivative of the due process claim, that it rose and fell with that, which we agree is correct. There's no dispute between us and the Commonwealth that, in  Let's go back to the question Judge Greenberg had, and that is, and I'm asking you, what relief do you want on the due process claim? We believe that Mr. Fantone should be given the opportunity to go back and try to take discovery and prove his case at trial. What do you prove? We would find that he was entitled to due process, and then you have to establish he didn't receive the process that was due, or the district court would initially have to make a determination as to what process is required, and whether he had received it, and if he didn't, then what are your damages? I think his damages, he's not pleading the complaint, other than a general damages claim, but the damages that he would seek would be for the improper incarceration for a period. That's the measure of damages on the due process claim. That's what he's pleaded. Whether he would seek other relief, you know, truthfully what he's probably seeking is vindication of the fact that he was not pleading the complaint. On the conspiracy claim, he never heard what was said, but he's assuming that was said. He didn't hear it. He observed it. He observed conduct. He observed conduct, but he didn't hear what was said. Therefore, the judge threw it on a 12B6. That's correct. What's wrong with that? Well, I would submit that in the context of conspiracy claims and other claims that involve conduct that is, you know, alleged to be nefarious, typically, and there's lots of case law on this by the Third Circuit, the Supreme Court, and many state courts, that the direct conduct is rarely observed. Just like in an antitrust case, you rarely have, with the exception, apparently, of Microsoft, a situation where the direct state. Well, it's obvious they're going to deny that there was a conspiracy, and he has no proof that there were, other than he observed them speaking. In Judge Cowan, I would say that's a matter for trial. I mean, typically, defendants do deny that they've engaged in protected conduct, or we don't end up in trials. Well, maybe we can settle the case. We'll get the Attorney General to give you a letter that says you were mistreated. Now, sign this release. Might have to ask counsel for the Commonwealth. No, he's got a damages claim. That's all he's seeking. I'm dead serious. It may well be that if that's what he's really seeking. I'm not talking about the retaliation. The other part, maybe you can come to some kind of an agreement, and I'm dead It could well be. Let me just note, I know my red lights on. My parents always told me never go through red lights. I'm happy to continue if the court has more questions, but I didn't want to step on your good graces. All right. I have no other questions. Nothing. Okay. Thank you. Thank you, Your Honor. Is it Mr. Mericlai? It's Mr. Mericlai. Thank you. Mericlai. Thank you. There's no way you could tell that. No, I wouldn't. It's from the orthography. It's a unique aspect of Turkish pronunciation. Okay. Thank you. May it please the court, Cam Mericlai here for the appellees. I'm a member of the Office of the Attorney General of Pennsylvania. I'd like to emphasize that our basic position here is that Boone v. Nose was rightly decided, and albeit a non-presidential opinion, we think it should be viewed as persuasive and it should, in fact, resolve this dispute with which it is factually and theoretically on all fours, and that is our primary position as regards the due process case. As Judge Greenberg mentioned, retaliation claims are independent of that aspect. Both you, Judge Van Aske and you, Judge Greenberg, have probed the question of what procedures, other than what occurred in this case, could, in fact, be provided as a practical point of view, independent of the question of whether or not due process might or might not require them. And my response to that is we can look at, Magistrate Judge, Eddie's opinion for the Western District of Pennsylvania in Boone v. Nose, the underlying case, and see what is, in fact, done in circumstances like this where an individual receives a prison misconduct after there's been an act of parole, but before parole has been executed and before he has been released on parole. At that point, we know, as a matter of law, it's been handed down to us from the United States Supreme Court. Once he's released on parole, parole can't be revoked without due process of law. That's Morrissey v. Brewer. What state law says plainly and what I suggest should equally apply in matters such as this is that prior to that time, any expectation he has in a grant of parole may be rescinded without due process of law. Nevertheless, it's interesting to note that it's an instance, and the Supreme Court of the United States has grappled with that in the case of Olin v. Wikinga-Kona. There are circumstances where due process of law is not required, but nevertheless, administrations and bureaucracies provide for hearings, notice and opportunity to be heard because it's better for everyone. Why was he kept in the RHU after his commitment expired? He was kept as a result of a determination that he was amenable to administrative custody. As you recall... What does that mean, amenable to administrative custody? They were afraid. He's a man who was taking methadone. He was accused and convicted. But he was put there as a commitment. Yes. The commitment's over. The commitment's over. Doesn't that make us like Wilkinson? They still thought he might be a danger to Cochrane Medicine. But no finding had ever been made to that point. No. So why did they keep him in RHU? They kept him in RHU because they were afraid he might continue to do things like he had done from his conduct. They might, but there's no proof of anything. Does that make this a Wilkinson case? No. Because first, it's a period of time that he stayed in administrative custody. He was in disciplinary custody for approximately four months, and then he was in administrative custody for approximately three months. And in Griffin v. Vaughn, this court has said that 15 months of administrative custody do not entitle you to due process of law. He only had three and a half months at SCI Pittsburgh in administrative custody before he went to Cole Township, where he didn't have any administrative custody. Once again, remember, prisons are administered by the Department of Corrections, and they decided they wanted to put him in administrative custody. If they keep him there for less than 15 months, they can do that. He has periodic weekly reviews for the first year. So he got a periodic review every week, which is enough due process, even to add due process. I understand the prison has wide latitude, and it should be given a lot, but they kept him there based on an assumption, which there was never any proof of. That was never verified. Well, it was verified in the sense that they had a misconduct conviction. It was subsequently reversed. It was subsequently reversed in administrative proceedings, and they also had another misconduct conviction, which indicated that he was spreading dissension and was being insolent, and that was also reversed on administrative procedures. But at that time, they were entitled to act on their first determination, which is you have a man who's in a sense dealing in drugs and spreading. They're entitled to act on their determination, which was never proved and was reversed on two occasions. They're entitled to act on that. That sounds like Wilkinson to me, doesn't it? No, Your Honor, because it's not a matter of circumstances of extreme isolation. It's not a matter of indefinite confinement. All right. He was not exactly the Plaza Hotel either. No, but on the other hand, one of the circuits, which I've cited for you in my brief, has made it clear that, in fact, only process that's due for administrative custody, which is a suspicion, along the same lines in which Manor Health and Guantanamo Bay. It's the idea that this person might be a danger to the prison system because of their perceptions and their attitudes. The only process that's due under Helms v. Hewitt and under other cases like Griffin v. Vaughn, even if it's of such duration as to implicate due process, which it was not here, the only process that's due is a periodic review. He had those periodic. What about the parole part of this? Was there any opportunity for him to say to the parole board, hey, these misconducts have been set aside? That's what I was driving at with Food v. Nose, magistrate judge's opinion. There's a regulation of the Department of Corrections that any time somebody's awaiting parole on a grant and they commit a misconduct, you have to tell the parole board. And also, if, in fact, that misconduct is reversed, I beg your pardon, you have to tell the parole board. So that's what happened in Boone v. Nose. Then the issue with Boone v. Nose, which my learned opponents do not present in this case, is what does the parole board do? And what the parole board does is it schedules a new hearing with all deliberate speed. And that issue in front of magistrate judge Eddy, which never really made it to this court on the appeal in Boone v. Nose, is that enough or does the parole board have to drop everything and get right to this again once the misconduct's been reversed? And magistrate judge Eddy said they shouldn't have to drop everything. They should be able to do it on the next scheduled occasion. Now, this is off the record, but I mentioned my learned opponents are here and they've discussed things that had to do with his misconduct hearing after the fact. But what happened is he, and you can see this at page 5 of magistrate judge Eddy's opinion in this case, footnote 3, which is also the joint appendix at page 11. And what happened is there was another misconduct, not just these two. There was a third misconduct, and that was never reversed. So he had this misconduct anyway, regardless of what happened to these two. Now, what happened is in April of 2013, he got another parole hearing. And they rejected his parole because they said not only did he have misconducts, but he had poor prison behavior and he had done badly on parole the last time he was paroled. And so then there was another parole hearing. Meanwhile, he got two more misconducts in 2013. And what happened is there was another... At Cole Township? Yes. And then there was another parole hearing on January the 7th, 2014. The one was April 15th, 2013. There was another one on January the 7th, 2014, and they said, your max is coming up July 27th, 2014. You're serving until your max. Talk about the retaliation claim, please. Can you run through the chronology of events here? The chronology of events in the retaliation claim is that he was interrogated by a corrections officer, Berger, one of the FLEs, before the misconduct hearing involving the cupping of the methadone. And he claims that Berger threatened him and said, if you don't confess, a hard rain is going to fall and you're going to be kept in the hole forever and bad things will be your life. And the standard of review requires us to accept that as what happened for purposes of pleading. And our position there is that in an interrogation for a misconduct, you don't have a Fifth Amendment right against self-incrimination. And in order for that Fifth Amendment right, now you ask, perhaps, well, what happens if he can have an adverse inference in the misconduct hearing for his refusal to confess? That's Baxter v. Palminciano. And so forth. So what happens if you take whatever occurred in the context of his refusal to incriminate himself in the misconduct hearing and introduce it against him in a criminal case? Then he has a Fifth Amendment right. Because it's only until the information regarding self-incrimination that's been coerced from him is introduced against him in a criminal trial that you have an actionable Fifth Amendment right. So in this case, there was no protected right. There was no protected right. In the context of an interrogation for a misconduct, you can, in fact, if you're a corrections officer, threaten him and say, if you don't confess to this, if you remain... Then he files a grievance and he gets another misconduct charge. Yes, he files a grievance against Berger, claiming Berger is responsible for getting him the misconduct and for getting him in the hall. For the drug charges. Yes, and also for putting him in the administrative custody. And the trouble with that from the standpoint of pleading, again, we have to admit this, but the trouble with that from the standpoint of pleading is it was Lieutenant Lettini that put him in administrative custody. Berger couldn't and didn't. So he didn't plead any facts that make a connection between this obvious antagonism between him and Berger, that he's pleaded at least, and the actions on the part of Lieutenant Lettini. And that's really our only case for the dismissal of the retaliation at the pleading stage. A retaliation has to be done in retaliation for a protected right. He didn't have a protected right. No matter how obnoxious it might seem to people from the standpoint of personal dealings or basic fairness or what have you, he doesn't have a Fifth Amendment right against self-incrimination when he's interrogated by a corrections officer about a misconduct. And he may be... He has a protected right to file a grievance. He had a protected right to file a grievance, but he filed a grievance against Berger and it was Lettini who put him in the hall. So the only other point I'd like to make is, and I apologize for this, but in studying and preparing for the oral argument, I felt that there were two cases that I ought to have presented to you. One was Jago v. Van Curen, which is a United States Supreme Court case at 454 U.S. 14. What's the name of the case again? Jago, J-A-G-O. J-A-G-O. Versus Van, V-A-N, Curen, C-U-R-E-N, United States Supreme Court case at 454 U.S. 14, 1981 case. And that talks about the fact that an expectation that you were... In that case, Jago was awaiting a grant of parole, just like Mr. Fantone was in this case. He committed a misconduct and without any due process or without any process at all, his parole was rescinded. The United States Supreme Court said, before one is released, that expectation, the disappointment of that expectation in parole is not an interest that's a protected liberty interest under the Due Process Clause and does not require any process for its removal. Subsequently, this court, in a comparable case, Evans v. the Secretary of the Department of Corrections, at 645 F. 3rd, 650, which is a 2011 case. In that case, this court extended the rule in Jago to a situation where an individual's maximum sentence was recalculated after 11 years. This man, Evans, had been looking forward to being released on December 9th, shall we say, 2014, for 11 years. And then three or four months before that, they said, we made a mistake. You have another four years. You don't get out until 2018, December 9th, 2018. And he said, you have 11 years to fix that. Don't I get some sort of consideration? And they said, no, it's merely an expectancy. Let's go back to our case with Mr. Fantone. I think it makes it absolutely clear that anything having to do with his You didn't tell us what we held in Evans. You just told us the argument. No, you held that there was, in fact, a disappointed expectation in those circumstances. That it could be remedied? That it was not subject to remedy. He had no entitlement to release. Because it was a mistake he had to do. So there was no argument, but that the reconfigured sentence was correct. That's correct, Judge Greenberg. That's correct. The fact that he had been told otherwise for 11 years was tough. Yes. So, I mean, there is a whole body of law on which we rely, which talks about the difference between things that are tough and things that might not seem fair in a way, and their lack of fit with protected liberty interests. We understand your argument. Thank you very much. Thank you. I appreciate your time and your forbearance in allowing me to remedy the defect and failing to cite those cases in my brief. Thank you. Mr. Long? Thank you, Your Honors. Just a couple of quick points in response to the Commonwealth's arguments. Sure. And obviously anything the Court would like me to address. Cole Township. What happened at Cole Township is irrelevant to this case. Most importantly, it wasn't before the District Court. So all of these things that happened later are irrelevant. There's nothing the District Court could have or would have considered. Wilkinson. What does Wilkinson really focus on? On the one hand, it's the level of hardship a prisoner endures. On the other hand, whether there's an effect on the sentence. Mr. Fantone suffered both indignities. On the level of hardship. The conditions of confinement in Supermax are much harsher than the RHU. They may or may not be, but that's an issue for trial. No, that's an issue for us to decide in the first instance. It could be. In all these cases, we don't go through and say we've got to get a trial to see if these conditions are atypical. We look at the fact that there's an RHU confinement for a number of months and we say that's not atypical and, therefore, there's no due process. In paragraph 213 of his complaint, Mr. Fantone pleads he was confined 23 hours a day and there are other allegations that he didn't get visitation, had other deprivations. I would submit that we're much closer. I've spent very limited time in prison, but I can tell you we're much closer to a Supermax situation with what he sustained than, as one of the justices said, the Plaza Hotel. This is not an easy situation in solitary. The second is the effect on sentence. It would be happening now that we consider that your time in prison was visiting clients. Thank you. I appreciate that. And relatives. So the effect on his sentence is fairly obvious here. It's not a situation where we're trying to theorize, as they were in Sandin, about whether there would or would not have been an effect on his sentence. There's no question that occurred here. One interesting fact that's laid out in the pleadings is that he gets, he finds out that his parole is rescinded the next day. The next day is when he finds out that the disciplinary proceedings are dismissed. I'm on the red light. If, with the court's indulgence, I'd like to make one quick point. Boone, I understand what the arguments are that are advanced there. One of the things to look at in Boone, it's on page, I don't have a page in front of me. I do. It's page 113. In Boone, there's a discussion in that decision of the extensive review process that the inmate got in trying to fight the grievances. And obviously one of the allegations here by Mr. Fantone is that he had no such opportunity. He was asked to, he asked the state to present its witnesses. They didn't. He asked to see the evidence in front of him. It was never given to him. And so to the extent there's something different about Boone, that's certainly a difference because he never had the opportunities that the inmate got in Boone. In Boone, we found no protected liberty interest. It's a difference without a meaning. It could be, Your Honor. Yeah. Okay. I don't have anything else. Anything else? Mr. Lon, I want to thank you and thank Ms. Ackerman and Jones Day for the wonderful work they did in this case. I commend both counsel for an extremely well-argued case, and we'll take the matter under advisement.